**Farnsworth & Vance**
2525 Gambell Street, #410
Anchorage, AK 99503
Phone: (907) 290-8980
Fax: (907) 290-8695
contact@injuryak.com

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| HUNTER O. WEEKS, as Personal Representative of the Estate of L.H.W., deceased, and CHEYANNE TAYLOR SCHLUETER WEEKS,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 3:26-cv- |

## COMPLAINT

COMES NOW Plaintiff, Hunter O. Weeks, as Personal Representative of the Estate of L.H.W., by and through counsel, Farnsworth & Vance, and for his claims against Defendant UNITED STATES OF AMERICA, states and alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff Hunter O. Weeks is the father of the deceased infant L.H.W. and is the duly appointed Personal Representative of the Estate of L.H.W., in the matter styled In the Matter of the Estate of L.H.W., Case No. 3AN-25-

01752PR, in the Superior Court for the State of Alaska, Third Judicial District at Anchorage.

2. At all times relevant to this cause of action, Plaintiff Hunter O. Weeks was a resident of the Third Judicial District, Anchorage, Alaska.

3. This action arises under the Federal Tort Claims Act, 28 U.S.C. Section 1346(b)(1), 2671 et seq. At all times relevant to this cause of action, the medical care and treatment giving rise to this action was provided at JBER Hospital, 673rd Medical Group, a federal medical facility located at Joint Base Elmendorf-Richardson, Anchorage, Alaska.

4. At all times relevant to this cause of action, the physicians, nurses, and staff who provided care to Cheyanne Taylor Schlueter Weeks and to L.H.W. were employees and agents of the United States acting within the course and scope of their employment.

5. On or about September 26, 2025 and pursuant to 28 U.S.C. 2675(a), Plaintiff presented an administrative tort claim to the Department of the Air Force for the wrongful death of L.H.W. More than six months have elapsed since the presentation of that claim without final disposition, and Plaintiff has exhausted his administrative remedies.

6. Economic and noneconomic damages are in excess of $100,000.00.

7. Venue is proper in the United States District Court for the District of Alaska because the acts and omissions giving rise to this action occurred at Joint Base Elmendorf-Richardson, Anchorage, Alaska.

## STATEMENT OF FACTS

8. Cheyanne Taylor Schlueter Weeks is married to Plaintiff Hunter O. Weeks and is the mother of L.H.W.
9. On or about March 26, 2024, at approximately 40 weeks and 4 days of gestation, Ms. Weeks was admitted to JBER Hospital for elective induction of labor.
10. On admission, the estimated fetal weight was recorded as 4000 grams, and an estimated fetal weight greater than 4000 grams was noted as a maternal risk factor.
11. Induction of labor began with placement of a cervical balloon at approximately 15:55 on March 27, 2024, followed by intravenous oxytocin augmentation.
12. The fetal heart rate tracing was reassuring during most of the first stage of labor. Beginning at approximately midnight on March 28, 2024, the tracing demonstrated marked and prolonged periods of decreased beat-to-beat variability.
13. Ms. Weeks reached complete cervical dilation at approximately 00:23 on March 28, 2024, and began pushing shortly thereafter.
14. When maternal pushing began, the fetal heart rate tracing demonstrated recurrent late decelerations, which became more pronounced at approximately 02:24 and persisted through delivery.

15. Despite the deteriorating fetal heart rate tracing, the attending obstetrician, Dr. Amanda N. Killinger, DO, and the labor and delivery nursing staff continued oxytocin augmentation and continued labor efforts for hours.

16. By approximately 04:01 on March 28, 2024, the fetal heart rate tracing showed worsening late decelerations. Ms. Weeks pushed for more than four hours.

17. L.H.W. was delivered vaginally at approximately 05:05 on March 28, 2024. A tight nuchal cord and a shoulder dystocia were encountered during the delivery.

18. L.H.W. was born in a severely depressed condition. His Apgar scores were 1, 2, and 2 at one, five, and ten minutes of life, and his initial umbilical cord gas pH was 7.04.

19. L.H.W. required immediate resuscitation, including intubation and chest compressions.

20. During the resuscitation, an umbilical venous catheter was placed and epinephrine was administered. The record documents that 8 mL of epinephrine was administered through the catheter instead of the intended 0.8 mL, a tenfold overdose.

21. At approximately one hour and 41 minutes of life, a neonatal transport team arrived, and L.H.W. was transferred by LifeMed Alaska to the Neonatal Intensive Care Unit at Providence Alaska Medical Center.

22. At Providence Alaska Medical Center, L.H.W. was found to have severe hypoxic ischemic encephalopathy, respiratory failure, pulmonary hypertension, liver failure, coagulopathy, and renal failure.

23. Despite treatment, L.H.W.'s condition did not improve. His parents elected compassionate extubation, and L.H.W. died on March 28, 2024.

24. An autopsy identified severe hypoxic ischemic encephalopathy, meconium aspiration, pulmonary hypertension, status post cardiopulmonary resuscitation, multisystem organ failure, and related findings—all findings indicate extreme pain and suffering by L.H.W. prior to dying.

25. L.H.W. sustained an intrauterine hypoxic ischemic injury in the hours before his delivery. Had he been delivered in a timely manner, this injury and his death would have been avoided.

26. The death of L.H.W. was preventable, foreseeable, and caused by medical care that fell below the standard of care.

27. As a direct and proximate result of the negligent care described above, Plaintiffs have incurred medical, hospital, transport, and related expenses.

28. The loss of L.H.W., and the manner in which he suffered and died, has been of great detriment to the mental and emotional health of his family.

29. L.H.W. suffered extreme pain and injury prior to his death, all caused by defendants.

30.

## CAUSES OF ACTION

## COUNT 1 - NEGLIGENCE & RECKLESSNESS
## (Obstetrical Care)

29. Plaintiff incorporates the allegations contained in paragraphs 1 through 29 above.

30. At all times relevant to this cause of action, the attending obstetrician, Dr. Amanda N. Killinger, DO, and the obstetrical staff who cared for Ms. Weeks and L.H.W. were employees and agents of the United States acting within the course and scope of their employment.

31. The obstetrical providers breached the standard of care owed to L.H.W. by failing to recognize and respond to the deteriorating fetal heart rate tracing, failing to discontinue oxytocin augmentation in the face of that tracing, failing to timely perform a cesarean section or operative vaginal delivery, and failing to deliver L.H.W. in a timely manner.

32. In continuing labor efforts for hours despite a deteriorating fetal heart rate tracing, the obstetrical providers showed deliberate indifference to the safety and health of L.H.W.

33. The obstetrical providers showed a gross neglect for the standard of care and, in doing so, demonstrated a deliberate disregard for the rights of L.H.W. Their conduct constituted reckless misconduct and deliberate disregard.

34. As a direct and proximate result of these breaches of the standard of care, L.H.W. sustained an intrauterine hypoxic ischemic injury and died.

35. The United States is liable for the acts and omissions of its employees and agents.

## COUNT 2 - NEGLIGENCE & RECKLESSNESS
## (Nursing Care)

36. Plaintiff incorporates the allegations contained in paragraphs 1 through 35 above.

37. At all times relevant to this cause of action, the labor and delivery nursing staff who cared for Ms. Weeks and L.H.W. were employees and agents of the United States acting within the course and scope of their employment.

38. The labor and delivery nursing staff breached the standard of care owed to L.H.W. by failing to recognize the deteriorating fetal condition, failing to discontinue oxytocin augmentation, failing to timely alert the attending obstetrician, and failing to initiate the chain of command to advocate for the mother and fetus.

39. In repeatedly failing to respond to the deteriorating fetal condition, the nursing staff showed deliberate indifference to the safety and health of L.H.W.

40. The nursing staff showed a gross neglect for the standard of care and, in doing so, demonstrated a deliberate disregard for the rights of L.H.W. Their conduct constituted reckless misconduct and deliberate disregard.

41. As a direct and proximate result of these breaches of the standard of care, L.H.W. sustained an intrauterine hypoxic ischemic injury and died.

42. The United States is liable for the acts and omissions of its employees and agents.

**COUNT 3 – Hunter O. Weeks –NIED and Loss of Consortium**

43. Plaintiff incorporates the allegations contained in paragraphs 1 through 42 above.

44. Hunter O. Weeks father, suffered negligent infliction of emotional distress from shock of witnessing and being informed of the immediate aftermath of the injuries and death of his infant son L.H.W.

45. Hunter O. Weeks also suffers from the loss of consortium and the relationship with his son and the loss of support and care he would have received from him in the future.

46. The injuries and losses to Hunter O. Weeks described herein are a direct and proximate result of the negligence of Defendants and each of them in causing the injuries and harm to infant L.H.W.

47. Fair compensation for the non-economic and economic losses of Hunter O. Weeks resulting from the negligence of the Defendants, and each of them, is estimated to be within the jurisdiction of this court.

**COUNT 4 – Cheyanne Taylor Schlueter Weeks –NIED and Loss of Consortium**

48. Plaintiff incorporates the allegations contained in paragraphs 1 through 47 above.

49. Cheyanne Taylor Schlueter Weeks, mother, suffered negligent infliction of emotional distress from shock of witnessing and being informed of the immediate aftermath of the injuries and death of her infant son L.H.W.

50. Cheyanne Taylor Schlueter Weeks also suffers from the loss of consortium and the relationship with her son and the loss of support and care she would have received from him in the future.

51. The injuries and losses to Cheyanne Taylor Schlueter Weeks described herein are a direct and proximate result of the negligence of Defendants and each of them in causing the injuries and harm to infant L.H.W.

52. Fair compensation for the non-economic and economic losses of Cheyanne Taylor Schlueter Weeks resulting from the negligence of the Defendants, and each of them, is estimated to be within the jurisdiction of this court.

**COUNT 5 Negligence, Recklessness, Survival, and Wrongful Death**

53. Plaintiff incorporates the allegations contained in paragraphs 1 through 52 above.

54. In accordance with Alaska's survival and wrongful death regimes, AS 09.55.570 and .580, Defendants and each of them are liable to Plaintiffs for negligence and recklessness in amounts within the jurisdiction of this court, the exact amounts to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, having fully stated his Complaint, Plaintiff prays for judgment against the Defendant named herein as follows:

1. Compensatory damages in an amount in excess of $100,000.00, the exact sum to be proven at trial;
2. For pre-judgment and post-judgment interest at the maximum rate allowable by law;
3. For Plaintiff's actual costs and attorneys' fees incurred in pursuing this action;
4. Trial by Jury;
5. For such other and further relief as the court deems just, equitable and appropriate.

Dated this 18th day of November, 2026 at Anchorage, Alaska.

**Farnsworth & Vance**
Attorneys for Plaintiff

*/s/ Jeffrey H. Vance*
Jeffrey H. Vance, Esq.
Alaska Bar No. 0111080

*/s/ Ty Farnsworth*
Ty Farnsworth, Esq.
Alaska Bar No. 1511095